UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>GUSTAVO MURRILLO-ARRIOLA,<br><br>        Defendant. | Case No. 4:10-CR-103-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it Defendant's Motion to Allow Defense of Necessity (Dkt. 14). To assert a necessity defense, a "defendant must establish that a reasonable jury could conclude that (1) he was faced with a choice of evils and reasonably chose the lesser evil; (2) he reasonably acted to prevent imminent harm; (3) he reasonably anticipated a causal relation between his conduct and the harm to be avoided; and (4) he reasonably believed there were no other legal alternatives to violating the law." U.S. v. Perdomo-Espana, 522 F.3d 983, 988 (9th Cir. 2008).

With respect to the first element, Defendant asserts that four of his brothers and his Father were systematically executed by the same group of individuals in Mexico, and that the Mexican authorities did nothing to prevent it, seek justice for the murders, or prevent his own demise. The murders occurred between the late 1980s and early 1990s. The

evidence is presented by affidavit of Defendant's brother, Julio Murillo. Defendant therefore contends that his choices were to either come to the United States illegally or stay in Mexico and be killed. He argues that he chose the lesser evil by coming to the United States illegally.

The Government argues that evidence at trial will prove that Defendant was deported or voluntarily returned to Mexico six times between 1991 and 2007: February 9, 2007 (deport); December 17, 1998 (deport); March 19, 1997 (voluntary return); March 13, 1997 (voluntary return); July 30, 1002 (deport); and March 30, 1991 (deport). The Government also notes that there is no indication or records suggesting that Defendant ever claimed any fear of returning to Mexico during any of those events. Furthermore, the Government indicates that there are no ICE records showing that Defendant ever applied for asylum or any other claim that Defendant was in danger if he returned to Mexico.

Under these circumstances, the Court is inclined to rule that Defendant has not established that a reasonable jury could conclude that he was faced with a choice of evils and reasonably chose the lesser evil. The murders occurred 15-20 years ago, and Defendant has apparently returned to Mexico on several occasions without indicating any fear or suggestion that his life was in danger.

As to the second element – that Defendant reasonably acted to prevent imminent harm – Defendant contends that he left Mexico so that he would not be murdered like his brothers and Father. Again, Defendant's movement in and out of Mexico over the past

two decades, together with the lack of evidence that Defendant ever claimed any fear of returning to Mexico during any of those events, suggests otherwise.  The Indictment charges the Defendant with illegally returning to the United States after being deported on February 9, 2007.  Defendant's movement in and out of Mexico several times between 1991 and the February 9, 2007 date suggests that he was not in imminent danger when he entered the United States sometime between February 2, 2007 and April 20, 2010, the day he was arrested.

The third element Defendant must establish is that he reasonably anticipated a causal relation between his conduct and the harm to be avoided.  Defendant argues that he left Mexico so he would not be murdered.  Defendant's proffered evidence does not establish this element for the same reasons he cannot establish the first two elements. Defendant's movement in and out of Mexico over the past two decades, together with the lack of evidence that Defendant ever claimed any fear of returning to Mexico during any of those events, suggests that Defendant did not need to illegally enter the United States to prevent his murder.

Defendant also fails to establish the final element – that he reasonably believed there were no other legal alternatives to violating the law.  Defendant offers no explanation for why he did not apply for asylum or petition the Secretary of Homeland Security for lawful admission into the United States.

In his motion, Defendant asked the Court to allow him to present a necessity defense.  The Government responded by asking the Court to deny Defendant's request for

a necessity instruction. At this point, the Court is inclined to find that Defendant's proffered evidence does not meet his burden. However, the Court notes that during pre-trial hearings in *Perdomo-Espana*, the defendant requested to present a necessity defense, which the government moved to preclude. *Perdomo-Espana*, 522 F.3d at 986. The Court reserved its final ruling until after the presentation of evidence at trial, and allowed the defendant to testify before the jury about why he had entered the country. *Id*. At the conclusion of evidence, the defendant requested that the jury be instructed on his proffered defense of necessity. *Id*. The district court declined to give the requested instruction, and the Ninth Circuit upheld the district court's decision. *Id*. at 989.

Like the Court in *Perdomo-Espana*, this Court will allow Defendant to admit evidence regarding his reasons for entering the United States, so long as it is otherwise admissible under the rules of evidence. After the presentation of evidence, Defendant may renew his request for a necessity instruction.

## ORDER

**IT IS ORDERED:**

1. Defendant's Motion to Allow Defense of Necessity (Dkt. 14) **DENIED WITHOUT PREJUDICE**.



DATED: **October 14, 2010**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge